# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

FRASERSIDE IP L.L.C., an Iowa
Limited Liability Company,

       Plaintiff,

vs.

NETVERTISING LTD., d/b/a
HardSexTube.com, WHOISGUARD,
d/b/a HardSexTube.com, RICHARD
SZELES, LASLO RACZ, JOHN DOES
1-100 AND JOHN DOE COMPANIES
1-100,

       Defendants.

No. C11-3033-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION TO
DISMISS**

---

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . 2
   A. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   B. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      1. Facts Drawn From Complaint . . . . . . . . . . . . . . . . . . . 3
      2. Facts Related Solely To Personal Jurisdiction . . . . . . . . . . . 5

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   A. Rule 12(b)(2) Standards and Personal Jurisdiction . . . . . . . . . . . . . 7
   B. Personal Jurisdiction Analysis . . . . . . . . . . . . . . . . . . . . . . . . 11
   C. Federal Long-Arm Statute . . . . . . . . . . . . . . . . . . . . . . . . . . 18
      1. Claim arises under federal law . . . . . . . . . . . . . . . . . . . 20
      2. No state with personal jurisdiction over defendants . . . . . . . 20
      3. Due process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
   D. Limited Jurisdictional Discovery . . . . . . . . . . . . . . . . . . . . . . . 24

***III. CONCLUSION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Plaintiff, a producer of adult motion pictures, alleges that defendants, a Hungarian corporation and two Hungarian residents, have willfully violated plaintiff's copyright and trademarks by offering plaintiff's motion pictures on an Internet website they operate. However, the merits of plaintiff's claims are not presently before me. Rather, I must resolve, *inter alia*, whether plaintiff has made a *prima facie* showing that defendants have sufficient minimum contacts with Iowa to satisfy due process and permit the exercise of personal jurisdiction over them under Iowa's long-arm statute, or whether their contacts with the United States as a whole, as distinct from contacts with Iowa, are sufficient to permit the exercise of personal jurisdiction over them under the federal long-arm statute.

## *I. INTRODUCTION AND BACKGROUND*
### *A. Procedural Background*

On August 30, 2011, plaintiff Fraserside IP L.L.C. ("Fraserside") filed an Amended Complaint against Netvertising Ltd., doing business as HardSexTube.com, WhoIsGuard, doing business as HardSexTube.com, Richard Szeles, Laslo Racz, John Does and John Doe Companies, alleging the following causes of action: copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; contributory copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; vicarious copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; inducing copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; false designation of origin,

in violation of 15 U.S.C. § 1125(a); and, dilution of trademark, in violation of 15 U.S.C. § 1125(c).[1]

On June 16, 2012, Netvertising Ltd., Szeles and Racz (collectively, the "Netvertising defendants") filed a Motion to Dismiss. In their motion, the Netvertising defendants contend that they are not subject to personal jurisdiction in Iowa or under Federal Rule of Civil Procedure 4(k)(2) and the Complaint must be dismissed pursuant to Federal Rule of Civil procedure 12(b)(2). On June 30, 2012, Fraserside filed a resistance to the Netvertising defendants' Motion to Dismiss. Fraserside argues that Netvertising's internet activities establish a sufficient basis for specific personal jurisdiction under Iowa's long-arm statute. Fraserside, alternatively, argues that, even if it did not make a *prima facie* showing of personal jurisdiction under Iowa's long-arm statute, personal jurisdiction exists under the federal long-arm statute found in Federal Rule of Civil Procedure 4(k)(2). Fraserside also alternatively requests that I delay ruling on the Netvertising defendants' motion and permit it limited jurisdictional discovery. After obtaining an extension of time, the Netvertising defendants filed a timely reply brief on July 30, 2012.

## B. Factual Background

### 1. Facts Drawn From Complaint

On a motion to dismiss, I must assume all facts alleged in the Complaint are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46

---

[1] An additional defendant, WhoIsGuard, was named in the original Complaint filed on July 18, 2011. Otherwise, the Amended Complaint is identical to the original Complaint.

(1957).  The following factual background is drawn from the Amended Complaint, documents attached to the Amended Complaint, and public records.[2]

Plaintiff Fraserside is a subsidiary of Private Media Group, Inc., a Nevada Corporation ("Private Media").  Private Media and Fraserside, collectively, are commercially known as "Private."  Private Media is a producer of adult motion pictures. Its adult films are distributed on a wide range of platforms, including mobile handsets in 45 countries, digital television in 24 countries, broadband internet, a South American cable channel, DVDs, and on demand and subscription based services on the Internet.  Private has produced over 1,000 adult films and holds over 75 United States copyrights for its works.

---

[2] I note that I may consider public records, those materials that are embraced by the complaint, and documents attached to the complaint. *See Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) ("In addressing a motion to dismiss,'[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'") (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010); *Noble Sys. Corp. v. Alorica Cent., L.L.C.*, 543 F.3d 978, 983 (8th Cir. 2008) ("the district court is limited to the materials properly before it on a motion to dismiss, which may include public records and materials embraced by the complaint."); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (noting that a court "generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are "'necessarily embraced by the pleadings.'")(citations omitted). Materials necessarily embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters.*, 317 F.3d 820, 831 (8th Cir. 2003)); *see Jenisio v. Ozark Airlines, Inc., Ret. Plan,* 187 F.3d 970, 972 n.3 (8th Cir. 1999) ("A district court may consider documents on a motion to dismiss where . . . the plaintiffs' claims are based solely on the interpretation of the documents and the parties do not dispute the actual contents of the documents.").

Defendant Netvertising is the owner of HardSexTube.com. Netvertising is a Hungarian entity with an address in Szentes, Hungary. HardSexTube.com is a website and competes with Fraserside in the distribution and sale of adult audio-visual works through the Internet. HardSexTube.com allows users to view Fraserside's copyrighted works. HardSexTube.com sells advertising space on pages displaying Fraserside's copyrighted works. HardSexTube.com uses Fraserside's copyrighted works to increase traffic to its website and drive advertising revenue. HardSexTube.com and pays third parties to send traffic to its website.

### 2. *Facts Related Solely To Personal Jurisdiction*

The Netvertising defendants have supplied affidavits in support of their request to dismiss the Amended Complaint on the ground of lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). I have extracted the following facts, all uncontroverted, from those affidavits which relate to the Netvertising defendants' contacts with the State of Iowa.

Szeles is a resident of Hungary and a shareholder in Netvertising. Szeles has never visited Iowa. He has never been a resident of Iowa or the United States. He has never had an office, employees, or a telephone number in Iowa or the United States. He has never had an agent for service of process in Iowa or the United States. He does not advertise in Iowa or the United States, and has never maintained servers in Iowa or the United States. He has never paid taxes in Iowa or the United States. Szeles visited the United States once, for one week, on a personal holiday.

Racz is also a resident of Hungary. He is the director of Netvertising. Racz has never visited Iowa or the United States. He has never been a resident of Iowa or the United States. He has never had an office, employees, or a telephone number in Iowa or

the United States.  Racz has never had an agent for service of process in Iowa or the United States.  He does not advertise in Iowa or the United States, and has never maintained servers in Iowa or the United States.  He has never paid taxes in Iowa or the United States.

Netvertising owns and operates the HardSexTube.com website.  Netvertising has never had an office, employees, or a telephone number in Iowa or the United States.  It has never had an agent for service of process in Iowa or the United States.  Netvertising does not advertise in Iowa or the United States, and has never maintained servers in Iowa or the United States.  It has never paid taxes in Iowa or the United States.

Netvertising does not "aim" or "direct" the HardXXTube.com website at Iowa anymore than any other location where the internet is available.  Netvertising itself does not enter into commercial transactions with HardSexTube.com's users.  There is a link on the HardSexTube.com website for a "premium membership."  However, clicking on that link sends the user to a "white label" site operated by a third party.[3]  Netvertising does not own or control the white label website.  Instead, Netvertising entered into an agreement with a third party that hosts and runs the premium membership site.  The third party provides all the content for the site and exclusively handles all billing for the site.  Netvertising is paid a referral fee by the third party provider when an individual signs up for an account.

_____

[3]According to Wikipedia, "A white label product or service is a product or service produced by one company (the producer) that other companies (the marketers) rebrand to make it appear as if they made it." *White-Label Product,* Wikipedia, http://en.wikipedia.org/wiki/White-label_Product (last visited Sept. 26, 2012).

## II. LEGAL ANALYSIS

### A. Rule 12(b)(2) Standards and Personal Jurisdiction

In considering the Netvertising defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), Fraserside's Amended Complaint "must state sufficient facts . . . to support a reasonable inference that [each defendant] may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler,* 518 F.3d 580, 585 (8th Cir. 2008). "'Once jurisdiction ha[s] been controverted or denied, [plaintiffs] ha[ve] the burden of proving such facts.'" *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting *Block Indus. v. DHJ Indus., Inc.,* 495 F.2d 256, 259 (8th Cir. 1974)); *see Viasystems, Inc. v. EBM-Papst St. George GMBH & Co., K.G.,* 646 F.3d 589, 592 (8th Cir. 2011). Fraserside need not, however, establish jurisdiction by a preponderance of the evidence until an evidentiary hearing is held, or until trial. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991). Where, as here, "'the district court does not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party.'" *Pangaea, Inc. v. Flying Burrito L.L.C.,* 647 F.3d 741, 745 (8th Cir. 2011)(quoting *Dakota Indus., Inc.,* 946 F.2d at 1387); *Johnson v. Arden*, 614 F.3d 785, 793-94 (8th Cir. 2010)( "'If the District Court does not hold a hearing and instead relies on pleadings and affidavits, then we must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.'")(quoting *Epps v. Stewart Information. Serv. Corp.,* 327 F.3d 642, 646–47 (8th Cir. 2003)); *Romak USA, Inc. v. Rich,* 384 F.3d 979, 983-84 (8th Cir. 2004)(noting that a court "must view the evidence in the light most favorable to [plaintiffs] and resolve factual conflicts in its favor."). For Fraserside to

survive the Netvertising defendants' motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, Fraserside "'need only make a prima facie showing of jurisdiction,' and may do so by affidavits, exhibits, or other evidence." *Romak USA, Inc.,* 384 F.3d at 983 (quoting *Epps,* 327 F.3d at 647); *accord K-V Pharm. Co. v. J. Uriach & CIA, S.A.,* 648 F.3d 588, 591 (8th Cir. 2011); *see Viasystems, Inc.,* 646 F.3d at 592; *Pangaea, Inc.,* 647 F.3d at 745.

I "may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Dakota Indus., Inc. v. Ever Best Ltd.,* 28 F.3d 910, 915 (8th Cir. 1994); *accord K-V Pharm. Co.,* 648 F.3d at 592 ("Personal jurisdiction in a diversity case exists 'only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.'")(quoting *Dever,* 380 F.3d at 1073 (internal quotation marks omitted)). Iowa's long-arm statute "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution."[4] *Hammond v. Florida Asset Fin. Corp.,* 695 N.W.2d 1, 5 (Iowa 2005) (discussing Iowa Rule of Civil Procedure 1.306). "As a result, the Court is left with the sole issue of whether exercising personal jurisdiction over [the]

---

[4] Iowa's long-arm statute is actually set forth in two places: Iowa Code § 617.3 and Iowa Rule of Civil Procedure 1.306. Section 617.3 provides for the service of "foreign corporations or nonresidents contracting or committing torts in Iowa," Iowa Code § 617.3 (2006), and Rule 1.306 provides for an "[a]lternative method of service" that applies to "every corporation, individual, personal representative, partnership or association," Iowa R. Civ. P. 1.306. Rule 1.306 is the provision that specifically extends Iowa's jurisdictional reach to the federal constitutional limits. *See Hammond,* 695 N.W.2d at 5; *Larsen v. Scholl,* 296 N.W.2d 785, 788 (Iowa 1980) (noting that Iowa Rule of Civil Procedure 56.2 (now Rule 1.306), "unlike Iowa's older 'long-arm' statute, section 617.3, . . . expands Iowa's jurisdictional reach to the widest due process parameters of the federal constitution").

nonresident Defendant is consistent with principles of due process." *Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 499-500 (S.D. Iowa 2007); *see Bell Paper Box, Inc. v. U.S. Kids, Inc.* (*Bell Paper I*), 22 F.3d 816, 818 (8th Cir. 1994) ("[W]hen a state construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the due process clause . . . the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process.").

"The Due Process Clause requires 'minimum contacts' between the nonresident defendant and the forum state before the court may exercise jurisdiction over the defendant." *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). The Eighth Circuit Court of Appeals has explained sufficient minimum contacts as follows:

> "Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice." By defendant's reasonable anticipation, we mean "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." We have set "a five-part test for measuring minimum contacts: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Factors one through three are primary. With respect to the third factor, we distinguish between specific jurisdiction and general jurisdiction. "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any

> cause of action involving a particular defendant, regardless of
> where the cause of action arose.'"

*Id.* (citations omitted); *see K-V Pharm. Co.*, 648 F.3d at 592; *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 667 F.3d 515, 518 (8th Cir. 2010); *Steinbuch*, 518 F.3d at 585-86; *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006); *Epps v. Stewart Information. Servis. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003); *Guinness Import Co. v. Mark VII Distributors, Inc.*, 153 F.3d 607, 613 (8th Cir. 1998); *Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997); *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).

The Eighth Circuit Court of Appeals has further instructed that:

> The purposeful availment requirement ensures that a defendant
> will not be haled into a jurisdiction solely as a result of
> random, fortuitous, or attenuated contacts or of the unilateral
> activity of another party of a third person. Jurisdiction is
> proper, however, where the contacts proximately result from
> actions by the defendant himself that create a substantial
> connection with the forum State.

*Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693-94 (8th Cir. 2003) (citations omitted).

"'Minimum contacts must exist either at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.'" *Johnson*, 444 F.3d at 955-56 (quoting *Pecoraro v. Sky Ranch For Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003)). If the court determines that a defendant has the requisite "minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *see Luv N' Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) ("It

remains for us to inquire whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. When a plaintiff makes its *prima facie* case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." (citation and quotation omitted)). These other factors include:

> "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of the controversies," and the "shared interest of the several States in furthering fundamental substantial social policies."

*Burger King Corp.*, 471 U.S. at 476-77 (quoting *World Wide Volkswagen*, 444 U.S. at 292). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* at 477. If, however, a defendant "seeks to defeat jurisdiction" when the defendant purposefully "directed his activities at forum residents"—i.e., when minimum contacts are clearly established—the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

## B. *Personal Jurisdiction Analysis*

Fraserside contends that the Netvertising defendants' contacts with Iowa are sufficient to establish specific jurisdiction over them.[5] "In contrast to general, all-purpose

---

[5]Fraserside does not contend that any of the Netvertising defendants' contacts with Iowa are sufficient to establish general jurisdiction over them. "A court obtains general jurisdiction 'against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's

(continued...)

jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Brown*, 131 S. Ct. at 2851 (quoting Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 HARV. L. REV. 1121, 1136 (1966)). Thus, "[s]pecific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.'" *Johnson*, 614 F.3d at 795 (quoting *Steinbuch*, 518 F.3d at 586). Fraserside asserts that specific jurisdiction over the Netvertising defendants exists because they have directed tortious conduct at Iowa through the activities of the HardSexTube.com website.

In *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 710 (8th Cir. 2003), the Eighth Circuit Court of Appeals adopted the "sliding scale" approach established by *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), to determine if website contacts provide a basis for *specific* jurisdiction. *Lakin,* 348 F.3d at 710 ("We agree with our sister circuits that the *Zippo* model is an appropriate approach in cases of specific jurisdiction—, *i.e.,* ones in which we need only find 'minimum contacts.'"). The "sliding scale" approach recognizes that "'the likelihood that personal jurisdiction can be

---

[5](...continued)

activities directed at the forum.'" *Johnson*, 614 F.3d at 794 (quoting *Dever.*, 380 F.3d at 1073)(quoting in turn *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16 (1984)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853–54 (2011); *see Viasystems, Inc.*, 646 F.3d at 592 (quoting *Brown*, 131 S. Ct. at 2853-54). Thus, I will confine my analysis to whether specific jurisdiction exists.

constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that the entity conducts over the Internet.'" *Id.* (quoting *Zippo Mfg. Co.,* 952 F. Supp. at 1124). In *Lakin,* the Eighth Circuit Court of Appeals observed that:

> "At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."

*Id.* at 710–11 (quoting *Zippo Mfg. Co.,* 952 F. Supp. at 1124).

Fraserside relies upon the *Calder* effects test formulated by the United States Supreme Court in *Calder v. Jones,* 465 U.S. 783 (1984) and cites the decision in *CYBERsitter, L.L.C. v. People's Republic of China*, 805 F. Supp. 958, 968-974 (C.D. Cal. 2011), in which the district court applied the Ninth Circuit Court of Appeals's expansive interpretation of *Calder* to conclude that it had specific jurisdiction over defendant Chinese companies. The *Calder* effects test provides that:

> "a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the

13

> defendant knew was likely to be suffered—[in the forum state]."

*Johnson*, 614 F.3d at 796 (quoting *Lindgren v. GDT,* 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004)); *see Viasystems, Inc.*, 646 F.3d at 595 (quoting *Johnson*, 614 F.3d at 796). The *Calder* effects test "allows the assertion of personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'" *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390–91 (8th Cir. 1991) (quoting *Brainerd v. Governors of Univ. of Alberta,* 873 F.2d 1257, 1260 (9th Cir. 1989)). Moreover, the Eighth Circuit Court of Appeals, unlike the Ninth Circuit Court of Appeals, construes the *Calder* effects test narrowly. *See Johnson*, 614 F.3d at 796-97 ("Additionally, even if the effect of Heineman's alleged statement was felt in Missouri, we have used the *Calder* test merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state. . . We therefore construe the *Calder* effects test narrowly, and hold that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction."); *see also Furminator, Inc. v. Wahba,* No. 4:10CV01941, 2011 WL 3847390, at *3 (E.D. Mo. Aug. 29, 2011) (noting that the Eighth Circuit Court of Appeals construes the *Calder* effects test narrowly); *Oticon, Inc. v. Sebotek Hearing Sys., L.L.C.,*, --- F. Supp.---, 2011 WL 3702423, at *15 (D.N.J. Aug. 22, 2011) (noting in *Johnson*, the Eighth Circuit Court of Appeals expressly clarified its position that it construes the *Calder* effects test narrowly); *Express Scripts, Inc. v. Care Continuum Alliance, Inc.*, No. 410CV2235CDP, 2011 WL 2199967, at *4 (E.D. Mo. June 7, 2011) (observing that "[t]he Eighth Circuit has narrowly construed the *Calder* effects test. . ."). Although I accept as true Fraserside's allegations that the Netvertising defendants intentionally infringed Fraserside's registered copyrights and trademarks, these allegations, alone, fail to demonstrate that the

14

Netvertising defendants "uniquely or expressly aimed" their tortious acts at Iowa. *Johnson,* 614 F.3d at 796. At best, all Fraserside has established, for jurisdictional purposes, is that the Netvertising defendants intentionally continued to infringe Fraserside's copyrights and trademarks even after they were made aware of them by their continued operation of the HardSexTube.com website. That alone is insufficient to establish the express-aiming prong of the *Calder* effects test. In *Calder,* the court reasoned that jurisdiction in California was proper where the publisher of an allegedly libelous newspaper article had its "largest circulation" in that state. *Calder,* 465 U.S. at 790. Here, by contrast, Fraserside cannot point to a single user of the HardSexTube.com website in Iowa.[6] Although the HardSexTube.com website is both commercial and

---

[6]Fraserside argues that HardSexTube.com's website contains "geographically targeted advertising." Fraserside's Br. at 14. Specifically, Fraserside points to the fact that when one of its employees, in Iowa, logged onto HardSexTube.com's website, a pop-up advertisement appeared. This pop-up advertisements mentions "Find a new fuck toy near Northwood." The flaw in this argument is two fold. I take judicial notice of the fact that there there is more than one city named "Northwood" in the United States. Thus, the ad mentioning Northwood is not necessarily specifically targeting Iowa residents. Also, from the limited record before me, it appears that this website offers on-line, adult-oriented social networking services to individuals. However, there is no allegation that the website is affiliated with any of the Netvertising defendants. Thus, Fraserside has not established that this advertisements is for HardSexTube.com's services. Rather, it appears that HardSexTube.com merely provides banner advertising space on its website for unrelated services and are insufficient to establish personal jurisdiction. *See Dynetech Corp. v. Leonard Fitness,* 523 F. Supp. 2d 1344, 1347 (M.D. Fla. 2007) (holding that "the fact that the website of a company that sells products in Florida can be reached via a link on Defendants' website is too narrow a thread on which to find a meaningful "contact' for the purposes of due process."). As one district court recognized, if it were otherwise all websites "that feature advertisements may become subject to personal jurisdiction in any state regardless of whether they have actually directed their own business activities to the

(continued…)

15

interactive, as an Iowa district court noted in a case presenting similar facts, such a website "is arguably no more directed at Iowa than at Uzbekistan." *Lindgren v. GDT, L.L.C.,* 312 F. Supp. 2d 1125, 1131 (S.D. Iowa 2004). In *Lindgren,* the district court concluded that because the website could be accessed anywhere, including Iowa, "its existence does not demonstrate an intent to purposefully target Iowa." *Id.; see Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.,* 395 F.3d 1275, 1281 (Fed. Cir. 2005) (holding that defendant's website was "not directed at customers in the District of Columbia, but instead is available to all customers throughout the country who have access to the Internet"); *ESAB Group, Inc. v. Centricut, L.L.C.,* 34 F. Supp. 2d 323, 331 (D.S.C. 1999) ("While it is true that anyone, anywhere could access Centricut's home page, including someone in South Carolina, it cannot be inferred from this fact alone that Centricut deliberately directed its efforts toward South Carolina residents."). Thus, I conclude that Fraserside has failed to demonstrate that the Netvertising defendants' actions were "'performed for the very purpose of having their consequences felt in the forum state.'" *Dakota Indus.,* 946 F.2d at 1390–91 (quoting *Brainerd,* 873 F.2d at 1260).

Assuming, *arguendo,* Fraserside could demonstrate that the Netvertising defendants' actions were aimed at Iowa and that the consequences of their actions were felt in Iowa, the *Calder* effects test is "merely an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Johnson,* 614 F.3d at 796–97. I must

---

[6](...continued)
forum." *Zamora Radio, L.L.C. v. Last.fm Ltd.*, No. 09-20940-CIV, 2011 WL 2580401 at *8 (S.D. Fla. June 28, 2011) (dismissing complaint for lack of personal jurisdiction over defendant where website at issue allowed visitors to sign up for a newsletter, listen to live audio, post comments, and provided banner advertising space for unrelated products and services).

also consider the five factors developed by the Eighth Circuit Court of Appeals in determining whether a nonresident defendant has sufficient minimum contacts with the forum state to exercise personal jurisdiction over it. As discussed above, I must consider: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing its residents a forum; and (5) the convenience of the parties. *See K-V Pharm. Co.*, 648 F.3d at 592; *Wells Dairy, Inc.*, 667 F.3d at 518 *Steinbuch*, 518 F.3d at 585-86; *Johnson*, 444 F.3d at 956. Of these factors, "the first three factors are of primary importance, and the last two are 'secondary factors.'" *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2002) (quoting *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987)). After considering these five factors, I conclude that Fraserside has not demonstrated that any of the Netvertising defendants have sufficient minimum contacts with Iowa to justify exercising personal jurisdiction over them. All of the Netvertising defendants have a notable complete absence of contacts with the State of Iowa. Both Szeles and Racz are residents of Hungary. Neither Szeles or Racz have ever resided in, or visited, Iowa. Neither Szeles or Racz maintain any servers in Iowa, do not advertise there, do not own any real estate in Iowa, and have never paid taxes in Iowa. Netvertising has no employees in Iowa, and has never maintained a server in Iowa. Netvertising has never owned real-estate in Iowa and has never paid taxes in Iowa. Netvertising has never had a bank account in Iowa. Thus, the nature and quality of the Netvertising defendants' contacts with Iowa; the quantity of the Netvertising defendants' contacts with Iowa; and, the relation of the cause of action to their contacts, all decidedly weigh against exercising personal jurisdiction over them. While Iowa has an interest in providing a local forum in which its resident corporations may litigate claims against non-

residents, Iowa's "interest in providing its residents with a forum cannot make up for the absence of minimum contacts." *Digi–Tel Holdings, Inc., v. Proteq Telecomms.(PTE), Ltd.*, 89 F.3d 519, 525 (8th Cir. 1996). Additionally, the convenience of the parties is, at best, neutral given Fraserside's limited presence in Iowa and the unique burdens placed upon the Netvertising defendants having to defend themselves in a foreign legal system. *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114 (1987) (observing that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). Thus, after considering all five relevant factors, I conclude that the exercise of specific personal jurisdiction over any of the Netvertising defendants is inappropriate under the Iowa long-arm statute and fails to comport with due process. Accordingly, viewing the circumstances of this case as a whole, Fraserside has failed to make a *prima facie* case of personal jurisdiction over any of the Netvertising defendants.

### C. Federal Long-Arm Statute

Fraserside, alternatively, argues that, even if it did not make a *prima facie* showing of personal jurisdiction under Iowa's long-arm statute, personal jurisdiction exists under the federal long-arm statute found in Federal Rule of Civil Procedure 4(k)(2).[7] *See United*

---

[7]Rule 4(k)(2) states:

> **(2)** ***Federal Claim Outside State-Court Jurisdiction***. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

(continued…)

*States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir. 1999)(observing that Rule 4(k)(2) is "a sort of federal long-arm statute."). Rule 4(k)(2) permits a court to exercise jurisdiction over a foreign defendant that is not subject to the jurisdiction of the courts of general jurisdiction of any state, as long as the plaintiff's claim arises under federal law and the exercise of personal jurisdiction would not offend due process. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218-19 (11th Cir. 2009) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)). "Rule 4(k)(2) was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist." *Synthes (U.S.A.) v. G.M. Dos Reis Jr.*, 563 F.3d 1285, 1295 (9th Cir. 2009). Rule 4(k)(2) closed a loophole that existed prior to 1993. *Synthes*, 563 F.3d at 1295. As the advisory committee notes explain:

> Under the former rule, a problem was presented when the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state longarm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction. In such cases, the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts, which was incorporated into the federal practice by the former rule. In this respect, the revision

---

[7](…continued)
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

FED. R. CIV. P. 4(k)(2).

> responds to the suggestion of the Supreme Court made in *Omni
> Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 111,
> 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987).

FED. R. CIV. P. 4(k)(2) advisory committee notes to 1993 amendment. Specifically, Rule 4(k)(2) permits a court to exercise personal jurisdiction over a defendant if: (1) the plaintiff's claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction comports with due process. *See Synthes (U.S.A.) v. G.M. Dos Reis Jr.,* 563 F.3d 1285, 1293–94 (9th Cir. 2009); *see also World Tanker Carriers Corp. v. M/V Ya Mawlaya,* 99 F.3d 717, 720 (5th Cir. 1996); *see also Oldfield,* 558 F.3d at 1218-19..[8] I take up each of these requirements *seriatim*.

### 1. Claim arises under federal law

Fraserside brings six claims, all of which arise under federal law: copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; contributory copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; vicarious copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; inducing copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; false designation of origin, in violation of 15 U.S.C. § 1125(a); and, dilution of trademark, in violation of 15 U.S.C. § 1125(c). Since Fraserside has pled copyright and trademark claims, it is uncontested that those claims satisfy the first requirement of Rule 4(k)(2).

### 2. No state with personal jurisdiction over defendants

The second requirement of Rule 4(k)(2) requires that the Netvertising defendants not be subject to personal jurisdiction in any state. The Netvertising defendants argue that

---

[8]The Eighth Circuit Court of Appeals has not discussed Rule 4(k)(2). Thus, I look to decisions from the other federal courts of appeals for direction.

Fraserside has failed to prove that they are not subject to jurisdiction anywhere in the United States. However, rather than requiring the plaintiff to meet the onerous burden of proving that a defendant is not subject to personal jurisdiction, most circuits have adopted the following approach:

> A defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there. . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

*ISI Int'l, Inc. v. Borden Ladner Gervais L.L.P.,* 256 F.3d 548, 552 (7th Cir. 2001) (citations omitted); *see Touchcom, Inc. v. Bereskin & Parr,* 574 F.3d 1403, 1415 (Fed. Cir. 2009); *Holland Am. Line, Inc. v. Wartsila N.A.,* 485 F.3d 450, 461 (9th Cir. 2007); *Mwani v. bin Laden,* 417 F.3d 1, 11 (D.C. Cir. 2005); *Adams v. Unione Mediterranea Di Sicurta,* 364 F.3d 646, 651 (5th Cir. 2004). Because a majority of the federal courts of appeals have adopted this approach, I presume that the Eighth Circuit Court of Appeals would also follow it. The Netvertising defendants have not met their burden here and named another state where this lawsuit could proceed. Indeed, to the contrary, the Netvertising defendants argue that they are not subject to personal jurisdiction anywhere in the United States. Given this argument, Rule 4(k)(2)'s second requirement is satisfied here.

### 3. *Due process*

The third prong of Rule 4(k)(2) requires that the exercise of jurisdiction comport with due process. *Synthes,* 563 F.3d at 1293–94; *M/V Ya Mawlaya,* 99 F.3d at 720. The

21

due process analysis under Rule 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis, the only difference lies in that the forum under analysis shifts from Iowa to the United States as a whole. *See Synthes,* 563 F.3d at 1295; *Oldfield,* 558 F.3d at 1220; *Holland Am. Line, Inc.,* 485 F.3d at 463 (citing *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1159 (9th Cir. 2006)). The minimum-contacts test for specific jurisdiction has the following three requirements:

> First, the defendant must have contacts related to or giving rise to the plaintiff's cause of action. Second, the defendant must, through those contacts, have purposefully availed itself of forum benefits. Third, the defendant's contacts with the forum must be such that it could reasonably anticipate being haled into court there.

*Fraser v. Smith,* 594 F.3d 842, 851 (11th Cir. 2010); *see Synthes,* 563 F.3d at 1295 (outlining three factor test for specific jurisdiction which considers whether (1) the defendants have purposefully directed their activities at residents of the United States; (2) whether the claim arises out of or relates to the defendants' activities with the forum; and (3) whether the assertion of personal jurisdiction over the defendants would be fair and reasonable).

Turning to the facts of this case, Fraserside alleges that the Netvertising defendants have the following contacts with the United States:

> ●16.7% percent of HardSexTube's website's daily visitors are from the United States.
>
> ●HardSexTube.com's website is visited by over 4 million internet surfers per day.
>
> ●HardXXXTube.com entices web surfers to buy premium memberships at a white label website, and Netvertising is paid

a referral fee by the white label website when an individual signs up for such a membership.

- HardSexTube.com uses a California company as its registrar for domain privacy.

- HardSexTube.com contains ads targeted at Iowa residents.

- defendants solicit internet third parties to send surfers or traffic to HardSexTube.com and pays these third parties for the visitors they send to the website.

Plaintiff's Br. at 8-13, and 19.

Even if I assume, *arguendo*, that these allegations would support specific jurisdiction over the Netvertising defendants, Fraserside has not provided me with an adequate evidentiary basis to accept them.[9]

---

[9]Fraserside supports these assertions with naked printouts from various third-party websites. Rule 901 of the Federal Rules of Evidence requires authentication of evidence. Private web-sites, however, are not self-authenticating. *Martinez v. America's Wholesale Lender*, 446 Fed. App'x 940, 944 (9th Cir. 2011); *Foreword Magazine v. OverDrive, Inc.*, No. 1:10-CV-1144, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011); *St. Luke's Cataract and Laser Institute, P.A. v. Sanderson,* No. 8:06–cv–223–T–MSS, 2006 WL 1320242, at *2 (M.D. Fla. May 12, 2006); *Lorraine v. Markel Am. Ins. Co.,* 241 F.R.D. 534, 556 (D. Md. 2007). To authenticate printouts from a website, the party proffering the evidence must produce "some statement or affidavit from someone with knowledge [of the website] . . . for example [a] web master or someone else with personal knowledge would be sufficient." *In re Homestore.com, Inc. Sec.Litig.,* 347 F. Supp. 2d 769, 782 (C.D. Cal. 2004). Here, Fraserside has not offered any such materials which might meet the requirements for authentication. Even if Fraserside had properly authenticated the internet printouts, whether the information drawn from those printouts constitutes inadmissible hearsay remains. Since I have concluded that the website printouts are not properly authenticated, it is unnecessary to decide the hearsay question at this time.

23

### D. Limited Jurisdictional Discovery

Fraserside, alternatively contends that, even if it did not make a *prima facie* showing of personal jurisdiction, I should delay ruling on the Netvertising defendants' motion and permit Fraserside limited jurisdictional discovery. The Federal Rules of Civil Procedure provide for liberal discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes."). Courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981). When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery. *See Viasystems, Inc. v. EBM-Papst St. Georgen GMBH & Co.*, 646 F.3d 589, 598 (8th Cir. 2011) (noting that "'[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.'") (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074 n.1 (8th Cir. 2004) (quoting in turn *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 716 n.3 (4th Cir. 2002) (affirming district court's refusal to allow plaintiff to engage in jurisdictional discovery where plaintiff's request was based on "conclusory assertions")*; McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir. 1983) (holding that district court did not abuse its discretion in denying jurisdictional discovery where plaintiff "offered nothing beyond his bare allegations that the defendants had had significant contacts with the [forum] state of Maryland" (internal quotation marks omitted)); *see also Rich v. KIS Cal., Inc.,* 121 F.R.D. 254, 259 (M.D.N.C. 1988) ("[W]here a plaintiff's claim of personal

jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.").

Presumably conclusive information regarding the Netvertising defendants' contacts with the United States are available to Fraserside only through discovery. *See Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 455 (3d Cir. 2003) (noting that "any information regarding Step Two's intent vis-a-vis its Internet business and regarding other related contacts is known by Step Two, and can be learned by Toys only through discovery"). Because Fraserside has proffered facts that, if proven, would affect my exercise of jurisdiction over the Netvertising defendants, I grant Fraserside's request for jurisdictional discovery. To avoid potential disputes over the scope of Fraserside's discovery, I note that discovery under the Federal Rules of Civil Procedure is "'to be accorded a broad and liberal treatment.'" *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507 (1947)). This maxim applies equally when discovery is directed to personal jurisdiction. *See Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991); *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 788 (D.C. Cir. 1983); *Wyatt v. Kaplan,* 686 F.2d 276, 283-84 (5th Cir. 1982) (Wisdom, J.). Accordingly, Fraserside's discovery may inquire into all areas that are reasonably likely to aid in resolution of the jurisdictional issue here. Such jurisdictional discovery must be completed **on or before March 31, 2013.**

### III. CONCLUSION

For the reasons previously discussed, defendants do not have sufficient "minimum contacts" with Iowa to permit jurisdiction under Iowa's long-arm statute. However, because I grant Fraserside's request for jurisdictional discovery, I need not determine, at this time, whether personal jurisdiction exists under the federal long-arm statute found in Federal Rule of Civil Procedure 4(k)(2). The Netvertising defendants' Motion to Dismiss for lack of personal jurisdiction is denied without prejudice.

**IT IS SO ORDERED.**

**DATED** this 21st day of December, 2012.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA